# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cr-358-MOC-DSC-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| SAMUEL BLACKMOORE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Emergency Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 54). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) due to his medical conditions and the risk of contracting COVID-19. The Government has responded in opposition to the motion.

## I. BACKGROUND

From at least July 25, 2015 to August 18, 2015, Defendant used Ares, a peer-to-peer file sharing program, to download multiple files depicting minors engaged in sexually explicit conduct. (PSR ¶ 6). On September 2, 2015, agents executed a search warrant at Defendant's residence. (Id. ¶ 7). Defendant agreed to an interview and admitted to downloading child pornography via the internet. (Id. ¶ 13). Defendant also told the agents that he had watched videos of children having sex with adults and dogs, as well as infants being molested and children involved in bondage. (Id.). A forensic analyst reviewed the items agents seized from Defendant's home and located 36 videos of child pornography, including: a video, approximately 3:32 minutes long, in which an adult male attempts to engage in vaginal sex with a toddler age child and a 7:01 minute long video of an approximately 13 year old female engaging in vaginal

-1-

intercourse. (Id. ¶ 7, 14).

On December 13, 2017, the grand jury charged Defendant with three counts of Transportation of Child Pornography and one count of Possession of Child Pornography Involving a Prepubescent Minor. (Id. ¶ 1). Defendant pled guilty to the possession count on July 18, 2019, and the Magistrate Judge granted Defendant's motion to remain on bond. (Id. ¶¶ 1-2, Doc. No. 26).

The probation office calculated Defendant's base offense level as 18. (PSR ¶ 23). The probation office added two offense levels because Defendant possessed material involving prepubescent minors or minors who had not attained the age of 12, four levels because he possessed material that portrays sadistic or masochistic conduct or other depictions of violence, two levels because Defendant used a computer, and five levels because Defendant possessed more than 500 images of child pornography. (Id. ¶¶ 24–26). The probation office determined that the adjusted offense level was 31, and after a reduction for acceptance of responsibility, that the total offense level was 28. (Id. ¶¶ 31, 35). Based on a total offense level of 28 and a criminal history category of I, the U.S. Sentencing Guidelines ("U.S.S.G.") advised a range of between 78 and 97 months in prison. (Id. ¶ 61). This Court adopted the PSR. (Doc. No. 47 at 1).

On July 30, 2020, this Court sentenced Defendant to 30 months in prison and a ten-year term of Supervised Release. (Doc. No. 46 at 2–3). In its Statement of Reasons for the sentence imposed, this Court noted that it considered "the serious nature of the offense in which he was an active participant," the "need to provide general deterrence, and a need to avoid unwarranted sentencing disparities," as well as "the defendant's history and characteristics including his age, poor physical and cognitive health, family support, lack of criminal history at age 73, no criminal

-2-

Case 3:17-cr-00358-MOC-DSC   Document 59   Filed 11/29/21   Page 2 of 10

conduct since 2015, single violation of pretrial supervision, and the defendant's longtime community has ostracized him since his arrest." (Doc. No. 47 at 3). This Court also allowed Defendant to surrender for service of his sentence months later, "no earlier than October 1, 2020." (Id. at 2).

On September 26, 2020, Defendant moved this Court to extend his report date due to his age, various medical conditions, and the unavailability of the COVID-19 vaccine. (Doc. No. 49). This Court granted the motion and extended Defendant's report date to February 1, 2021. (Doc. No. 50). On January 11, 2021, Defendant again filed a motion to postpone his report date. (Doc. No. 52). In it, he made the same claims as in his prior motion and cited the need to receive the now-available COVID-19 vaccine. (Id.). This Court again granted Defendant's motion so he could get the vaccine and moved his report date to April 1, 2021. (Doc. No. 53).

Defendant received his second and final Pfizer Covid-19 vaccine dose on March 26, 2021. (Gov't Ex. 1 at 146). According to the Centers for Disease Control and Prevention ("CDC"), "COVID 19-vaccines are effective," and can prevent a person "from getting and spreading the virus that causes COVID-19," and "from getting seriously ill even if [a person gets] COVID-19."[1] With regard to the Delta variant, "[v]accines continue to reduce a person's risk of contracting the virus that cause COVID-19, including this variant;" "[v]accines continue to be highly effective at preventing hospitalization and death, including against this variant," and "[f]ully vaccinated people with breakthrough infections from this variant appear to be infectious for a shorter period." Id. As to the Pfizer vaccine in particular, "evidence from clinical trials in

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (September 23, 2021).

-3-

people 16 years and older, the Pfizer-BioNTech (COMIRNATY) vaccine was 95% effective at preventing laboratory-confirmed infection with the virus that causes COVID19 in people who received two doses and had no evidence of being previously infected."[2]

Fully vaccinated, Defendant started serving his sentence on April 1, 2021. (Ex. 2 at 2). He is serving his sentence at FCI Ft. Dix, with an anticipated release date of May 16, 2023. (Ex. 2 at 2). Defendant has no record of prison discipline since beginning his sentence approximately six months ago.

On September 1, 2021, Defendant filed the pending motion for compassionate release.[3] In it, he alleges that he "suffers from stage 3 kidney disease, Gout, an enlarged prostate, glaucoma, and arthritis," as well as "sleep apnea." (Doc. No. 54 at 3). Medical records supplied by the Bureau of Prisons corroborate the kidney disease, gout, hypertension, and sleep apnea diagnoses. (Gov't Ex. 1 at 6, 8). Because of these conditions and the Delta variant, Defendant contends he faces a substantially increased risk of becoming seriously ill if he contracts COVID-19. (Doc. No. 54 at 2, 3, 16). He contends that this increased risk constitutes extraordinary and compelling circumstances justifying his early release from his prison sentence. (Id.). He also argues that COVID-19 in general and the "harsh conditions" at FCI Ft. Dix amount to

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/PfizerBioNTech.html (September 23, 2021).

[3] Defendant claims that he submitted a request for compassionate release to the warden, and he attached that request to his Motion. (Doc. No. 54 at 18). The request is dated June 9, 2021, and
was based on the following medical conditions: high blood pressure, Stage 3 kidney disease, gout, asthma, arthritis, enlarged prostate, glaucoma, and sleep apnea. (Id.). Defendant states that he has yet to receive a response from the warden, Doc. No. 54 at 5, and BOP officials have not provided the Government any such response from the BOP. The Government concedes that Defendant has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).

extraordinary and compelling circumstances that warrant his release. (Doc. No. 54 at 7).

**II.     DISCUSSION**

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[4] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the

---

[4] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third

Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant has not established extraordinary and compelling reasons justifying compassionate release. Defendant's general fear of COVID-19 and its spread within FCI Ft. Dix "cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, because Defendant has received a vaccine effective at preventing COVID-19, the risks associated with that virus do not constitute extraordinary and compelling reasons justifying his early release. United States v. Burks, No. 3:14-CR-208-MOC-1, 2021 WL 1394857, at *3 (W.D.N.C. Apr. 13, 2021) ("Given that Defendant has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition . . . ."); United States v. Williams, No. 5:01-CR00012-KDB, 2021 WL

966028, at *3 (W.D.N.C. Mar. 15, 2021) ("Being vaccinated against COVID-19 seriously undermines Defendant's assertion that 'extraordinary and compelling reasons' warrant his release from prison.").[5]

Even if this Court were to conclude that Defendant meets the statutory requirement that he identify "extraordinary and compelling reasons," he would not be entitled a reduction in his sentence. See United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (affirming a district court's denial of compassionate release to a defendant who undisputedly established "extraordinary and compelling circumstances"). Compassionate release would remain unwarranted under the statute and helpful policy statement for at least two reasons. First, the statute, 18 U.S.C. § 3582(c)(1)(A), requires this Court to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" before reducing a sentence, Kibble, 992 F.3d at 331, and those factors call for Defendant's prison sentence to remain intact. This Court imposed Defendant's sentence with the COVID-19 pandemic in full view, just 14 or so months ago. Moreover, the Court varied downward from Defendant's advisory guideline range of 78 to 97 months to 30 months. This Court did so after considering "the serious nature of the offense in which he was an active participant," the "need to provide general deterrence, and a need to avoid unwarranted sentencing disparities," as well as "the defendant's history and characteristics including his age, poor physical and cognitive health, family support, lack of criminal history at

---

[5] In addition to the arguments based on his medical conditions and Covid-19, Defendant contends that "the virus continues to spread rapidly at FCI Ct. Dix," and that the "harsh conditions, coupled with the increasing number of infections at" FCI Ft. Dix amount warrant his release. The Government asserts that these statements are not supported by the statistics, which indicate that there are three staff members and zero inmate positive COVID-19 cases at FCI Ft. Dix. https://www.bop.gov/coronavirus/ (September 27, 2021).

age 73, no criminal conduct since 2015, single violation of pretrial supervision, and the defendant's longtime community has ostracized him since his arrest." (Doc. No. 47 at 3). At sentencing, this Court was aware of Defendant's various health issues and allowed Defendant to delay reporting to the BOP for several months so that he could receive the COVID-19 vaccine. Upon reconsidering the Section 3553(a) factors per 18 U.S.C. § 3582(c)(1)(A), this Court will not reduce Defendant's sentence. Nothing about Defendant's circumstances has changed in a way that makes his sentence inappropriately long. After he was sentenced, moreover, he received a COVID-19 vaccine, which only reduced the risks he faces from the virus.

Finally, the "nature and circumstances of the offense" demonstrate that the sentence Defendant received is still necessary to "afford adequate deterrence" 18 U.S.C. § 3553(a)(1), (2)(B). Reducing Defendant's sentence would reduce its capacity "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2). And it would promote "unwarranted sentence disparities." 18 U.S.C. § 3553(a)(6).

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of <u>United States v. McCoy</u>, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Emergency Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 54), is **DENIED**.

Signed: November 24, 2021

Max O. Cogburn Jr
United States District Judge